# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

MILOUS BROWN,

      Plaintiff,

v.                         Civil Action 2:19-cv-2425
                             Judge Michael H. Watson
                             Magistrate Judge Kimberly A. Jolson

DAVID GRAY, et al.,

      Defendants.

## REPORT AND RECOMMENDATION AND ORDER

This matter is before the Undersigned on the following: Defendants' Motion to Dismiss (Doc. 11), Plaintiff's request for Preliminary Injunction (Doc. 1); and Defendants' Motion to Strike (Doc. 14).

For the following reasons, it is **RECOMMENDED** that Defendants' Motion to Dismiss (Doc. 11) be **GRANTED in part** and **DENIED in part**. Specifically, the Undersigned recommends:

- granting Defendants' Motion to Dismiss Plaintiff's claims for supervisory liability and dismissing Defendants Gray, Taylor, Haley, and Hunyadi;

- granting Defendants' Motion to Dismiss Plaintiff's claims relating to the prison's grievance system;

- denying Defendants' Motion to Dismiss Plaintiff's claims for retaliation; and

- granting Defendants' Motion to Dismiss Plaintiff's Eighth Amendment claims.

It is also **RECOMMENDED** that Plaintiff's request for a preliminary injunction, (Doc. 1), which has been construed as a Motion for a Preliminary Injunction, be **DENIED**. Finally, Defendants have moved to strike Plaintiff's opposition brief because it was filed one week late.

(Doc.14). As Plaintiff explained in his opposition, (Doc. 15), prisoner mail is often delayed. Defendants' Motion to Strike (Doc. 14) is **DENIED**.

## I. INTRODUCTION

Plaintiff Milous Brown is a pro se prisoner currently incarcerated at Belmont Correctional Institution ("BCI"). Plaintiff has brought First and Eighth Amendment claims against the following six Defendants: Warden David Gray; Correctional Counselor Owen McRobie; Unit Manager John Ruiz; Unit Management Administrator David Taylor; Institutional Inspector Patrick Haley; and Assistant Chief Inspector Eugene Hunyadi. Plaintiff seeks the following relief:

1. a declaration that Defendants' acts and omissions violated his rights;
2. A preliminary and permanent injunction ordering Defendants to participate in further training and staff development, and an order directing the Office of Chief Inspector to allocate a minimum of two million dollars for further training and staff procedures;
3. $100,000 against Defendant Gray;
4. $250,000 against Defendant McRobie;
5. $150,000 against Defendant Ruiz;
6. $100,000 against Defendant Hunyadi; and
7. $100,000 in punitive damages against each Defendant.

The Court has construed Plaintiff's request for a preliminary injunction as a Motion for a preliminary injunction. (*See* Doc. 9). That Motion is now fully briefed. (*See* Docs. 1, 10, 12). Defendants filed a Motion to Dismiss for Failure to State a Claim on August 19, 2019. (Doc. 11). Despite briefing his request for a preliminary injunction, (Doc. 12), and Defendants' Motion to Strike, (Doc. 15), Plaintiff did not file a response to Defendants' Motion to Dismiss. In light of his pro se status, however, the Court will consider Plaintiff's constitutional claims on their merits.

## II. STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure requires that a complaint "state a claim to relief that is plausible on its face" to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 663–64, 678 (2009); *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007). In reviewing

the complaint, a court must construe it in favor of the plaintiff and accept all well-pleaded factual allegations as true. *Id*. at 57. "A claim has facial plausibility when the plaintiff pleads *factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (emphasis added) (citing *Twombly*, 550 U.S. at 556).

On the other hand, a complaint that consists of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient. *Twombly*, 550 U.S. at 555; *see also Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) (noting that a plaintiff must give specific, well-pleaded facts, not just conclusory allegations). In other words, while "detailed factual allegations" are not required under Fed. R. Civ. P. 8(a)(2)'s "short and plain statement" rule, the law "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 677–78 (quotation marks and citations omitted).

Furthermore, although pro se complaints are to be construed liberally, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), "basic pleading essentials" are still required, *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). Stated differently, "[t]he requirement for liberal construction. . . does not translate to ignoring a clear failure in the pleading to allege facts which set forth a cognizable claim." *Kidd v. Neff*, No. 1:12-cv-40, 2012 WL 4442526, at *2 (E.D. Tenn. Sept. 25, 2012 (dismissing pro se plaintiff's "incredibly vague" complaint), *see also Smith v. Breen*, No. 09-2770, 2010 WL 2557447, at *6 (W.D. Tenn. June 21, 2010) (collecting cases). Ultimately, to avoid dismissal, a plaintiff's complaint "must contain either direct or inferential allegations with respect to all the material elements" of each claim. *Wittstock v. Mark A. Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003) (citing *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003)).

## III. DISCUSSION

### A. Plaintiff's Complaint

Plaintiff's Complaint stems from a series of events that took place in November 2018. Plaintiff alleges that he gave Defendant McRobie an envelope containing "time sensitive legal mail" and a signed cash slip. (Doc. 1¶ 10). When Plaintiff checked his "Jpay Kiosk" to ensure that his mail had been sent, he discovered that no funds had been withdrawn. (*Id.*, ¶ 11). He approached his unit manager, Defendant Ruiz, to inquire about his mail. (*Id.*). Despite Plaintiff's attempts to explain the urgent nature of the matter, Defendant Ruiz allegedly told Plaintiff that he was "too busy" and to ask Defendant McRobie. (*Id.*).

Plaintiff alleges that he then told Defendant McRobie that he needed the envelope to reach the court "by the deadline." (*Id.*, ¶ 12). Defendant McRobie allegedly responded that he took the envelope "up front" and that his job was done. (*Id*). When Plaintiff asked whether someone else could help him, Defendant McRobie allegedly "became angered and demanded Plaintiff leave his office." (*Id.*).

At that point, Plaintiff allegedly went to the Captain's office and spoke with one of the time shift captains on duty, who responded that it was "not [his] job" and instructed him to return to his unit. (*Id.*, ¶ 13). After returning to his unit, Plaintiff again approached Defendant Ruiz to ask if anyone else could assist him. (*Id.*, ¶ 14). According to the Complaint, Defendant Ruiz repeated that he was too busy and that he should have left work an hour ago. (*Id.*). Plaintiff responded: "The Captain's office said someone in this unit is responsible to do this. I've asked you and McRobie. I really need this done." (*Id.*). Defendant Ruiz allegedly "became visibly angry" and said: "Oh . . . you went to the Captain's office? Let's see what McRobie has to say about that!" (*Id.*).

4

Defendant McRobie then walked Plaintiff to Defendant McRobie's office, and upon entering, allegedly said, "Guess who went to the Captain's office?" (*Id*., ¶ 15). According to the Complaint, Defendant McRobie became "furious" and said: "I told you I did my job! You're on the next thing smoking out of here. Now get the **** out of my office!" (*Id*.). Plaintiff alleges that he remained calm but insisted that he needed help with his mail. (*Id*.). In response, Defendant McRobie allegedly yelled: "I don't give a ****! Now get the **** out!" (*Id*.).

According to Plaintiff, these events caused him "severe anxiety," so he scheduled a walk-in appointment with his mental health liaison, Ms. Roy. (*Id*., ¶¶ 16, 17). While Plaintiff waited for his appointment, Defendant McRobie allegedly "stormed" into mental health and "menacingly" told Plaintiff: "I'm tired of you mother ****ers running to mental health every time you have a problem. Cuff up!" (*Id*.). Plaintiff alleges that he was immediately placed in handcuffs and moved to "the hole." (*Id*.). When he returned from the hole later that day, he found that he had been relocated to a housing unit "reserved for disciplinary problem inmates." (*Id*., ¶ 18).

Based on this sequence of events, Plaintiff contends that Defendants violated his Eighth Amendment rights by intimidating and harassing him and that they were "deliberately indifferent" to the mistreatment he endured. (*See generally* Doc. 1). He also accuses Defendants of retaliating against him for inquiring about his legal mail. (*Id*.).

Broadly speaking, Defendants move to dismiss Plaintiff's Complaint on the following grounds: (1) failure to exhaust; (2) failure to state a claim for supervisory liability; (3) failure to state a claim with regard to the prison's grievance system; (4) failure to state a claim with regard to his cell assignment and transfer to the hole; and (5) failure to state a claim for deliberate indifference. (*See generally* Doc. 11). The Court will address each of Defendants' arguments.

### *1. Failure to Exhaust*

First, Defendants argue that the Complaint must be dismissed because Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act of 1995 (the "PLRA"). (*Id*. at 6–9). More specifically, they assert that Plaintiff filed his initial informal complaint three days past the fourteen-day mandatory filing period and his second complaint eight days past the deadline. (*Id*. at 8).

While the exhaustion requirement is mandatory, the Sixth Circuit has held that "'[w]hen prison officials decline to enforce their own procedural requirements and opt to consider otherwise-defaulted claims on their merits, so as a general rule' should the federal courts." *Williams v. Harris*, No. 1:11-CV-362, 2012 WL 3150955, at *4 (S.D. Ohio Aug. 2, 2012), *report and recommendation adopted*, No. 1:11CV362, 2012 WL 6721088 (S.D. Ohio Dec. 27, 2012) (quoting *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010)).

Here, it appears that BCI officials responded to Plaintiff's grievances despite their purported untimeliness. For example, Defendant Haley responded to Plaintiff's grievance and represented that Plaintiff's claim would be investigated. (Doc. 1-4 at 4). After performing an investigation, Defendant Haley closed the matter, concluding that there was insufficient evidence to support his claim. (Doc. 1-5). Plaintiff appealed, and Defendant Hunyadi affirmed Defendant Haley's finding. (*Id*.). Defendants cannot now move to dismiss based on untimeliness after BCI officials substantively responded to Plaintiff's grievances. *See, e.g.*, *Still v. Davis*, No. 1:16-CV-640, 2017 WL 819819, at *3 (S.D. Ohio Feb. 2, 2017), *report and recommendation adopted*, No. 1:16CV640, 2017 WL 822113 (S.D. Ohio Mar. 1, 2017) (no failure to exhaust where prison officials responded to plaintiff's appeal on the merits despite alleged untimeliness); *Hall v. Raja*, No. 09-10933, 2012 WL 1033417, at *5 (E.D. Mich. Mar. 27, 2012) (concluding the same).

Consequently, it is recommended that Defendants' Motion to Dismiss for failure to exhaust be denied.

### 2. *Supervisory Liability*

Next, Defendants assert that Plaintiff's Complaint must be dismissed because it fails to allege that Defendants participated in the alleged misconduct. (Doc. 11 at 10–11).

"[T]he Sixth Circuit requires some sort of direct involvement, whether through encouragement, participation, or at the very least knowing acquiescence, in order to impose liability under § 1983." *Lupo v. Voinovich*, 235 F. Supp. 2d 782, 793 (S.D. Ohio 2002). And, relevant here, "[s]upervisory liability cannot be imposed in a Section 1983 action based on a theory of *respondeat superior* without proof of personal involvement." *Dillingham v. Millsaps*, 809 F. Supp. 2d 820, 844 (E.D. Tenn. 2011) (citing *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80–81 (6th Cir. 1995)). Rather, to establish supervisory liability, "there must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Rayburn v. Blue*, 154 F. Supp. 3d 523, 531 (W.D. Ky. 2015) (quotation marks, citations, and alterations omitted). In other words, "[l]iability of supervisory personnel must be based on more than merely the right to control employees" and "cannot be based upon a mere failure to act." *Id*. (quotation marks, citation, and alteration omitted).

Here, Plaintiff seeks to impose liability on four Defendants for failing to act. First, he alleges that BCI's Warden, Defendant Gray, "was deliberately indifferent to [his] concerns and made aware of his staff's dereliction of duty, verbal abuse, and inappropriate supervision." (Doc. 1, ¶ 27). Plaintiff asserts that, because Defendant Gray "delegated his responsibility" to Defendant Haley, Defendant Gray had an obligation to "follow up." (*Id*.).

7

Second, Plaintiff alleges that Defendant Taylor, as the Unit Management Administrator, had a responsibility to investigate Plaintiff's grievances and that, by failing to do so, was deliberately indifferent to the alleged misconduct. (*Id.*, ¶ 30). Third, Plaintiff alleges that Defendant Haley, as Inspector of Institutional Services, "failed to do his obligation to investigate and hold the staff responsible for their wrongful and unconstitutional treatment of the Plaintiff and complicit in the violation." (*Id.*, ¶31). Finally, he alleges that Defendant Hunyadi, as the Assistant Chief Inspector, failed to properly investigate Plaintiff's claims. (*Id.*, ¶ 32).

But because Plaintiff does not allege that these Defendants were directly involved in, encouraged, implicitly authorized, or otherwise approved the alleged unconstitutional conduct, he has failed to state a claim for supervisory liability. *See Leach v. Shelby Cty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989). Accordingly, Plaintiff's attempt to hold Defendants liable for their failure to investigate his grievances fails. *See, e.g.*, *Groomes v. Parker*, No. 08-2028-AN/P, 2008 WL 4057763, at *4 (W.D. Tenn. Aug. 26, 2008) (allegations that a defendant "mishandled a grievance or failed to investigate a complaint" do not meet the "[t]he standard" for supervisory liability) (citing *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the [constitutional] violation. A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not.")).

Because Plaintiff has failed to state a claim for supervisory liability, it is recommended that Defendants' Motion to Dismiss these claims be granted and that Defendants Gray, Taylor, Haley, and Hunyadi be dismissed.

### *3. Ineffective Grievance System*

Defendants also move to dismiss Plaintiff's claims related to BCI's grievance system. (Doc. 11 at 11–12).

Plaintiff essentially accuses Defendants of failing to satisfy their duties pursuant to the prison's grievance system. (*See, e.g.*, Doc. 12 at 5 (asserting that Defendants violated his constitutional rights by failing to address his grievances)). But "[t]here is no cause of action for the improper adjudication of, or failure to adjudicate, an inmate's grievances." *Taylor v. Luttrell*, No. 06-2522-AN/V, 2008 WL 4065927, at *5 (W.D. Tenn. Aug. 27, 2008); *see also Irvin v. Fluery*, No. 2:07-cv-117, 2007 WL 3036493, at *3 (W.D. Mich. Oct. 16, 2007) ("[T]he Sixth Circuit and other circuit courts have held that there is no constitutional right to access to an institutional grievance procedure."). Therefore, a plaintiff "cannot sue" a defendant "for refusing to give him a grievance form, or for improperly handling or processing his grievances." *Groomes*, 2008 WL 4057763, at *4.

Similarly, a prison's "[p]rocedural requirements alone do not create a substantive liberty interest, and mere violation of such procedures is not a constitutional violation." *Rienholtz v. Campbell*, 64 F. Supp. 2d 721, 731 (W.D. Tenn.), *aff'd*, 198 F.3d 247 (6th Cir. 1999) (citation omitted). Said differently, "federal courts simply do not sit as the ultimate appellate tribunal for prison grievance procedures." *Id.* (citations omitted). While Plaintiff is obviously dissatisfied with BCI's grievance system, he has failed to state a constitutional violation. Accordingly, the Undersigned recommends granting Defendants' motion to dismiss these claims.

### *4. Retaliation*

Next, Defendants move to dismiss Plaintiff's retaliation claims. (Doc. 11 at 13–14). Plaintiff alleges that Defendant McRobie temporarily moved him to the hole and transferred him

to a unit "reserved for disciplinary problem inmates" in retaliation for inquiring about his legal mail. (Doc. 1 ¶¶ 17, 18). He also alleges that Defendant Ruiz retaliated against him for the same by taking him to Defendant McRobie's office, where he was ultimately punished. (Doc. 1, ¶ 29).

Retaliation on the basis of a prisoner's exercise of his First Amendment rights violates the Constitution." *Harbin-Bey v. Rutter*, 420 F.3d 571, 579 (6th Cir. 2005) (citation omitted).

> In order to establish a First Amendment retaliation claim, a plaintiff must prove that: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Id*.

Defendants do not argue that Plaintiff's Complaint fails to satisfy any of the above requirements. Rather, they assert that Plaintiff has no constitutional right to a certain cell assignment, that Plaintiff's placement in segregation did not violate his due process rights, and that prison officials are afforded wide deference regarding the housing of inmates. (Doc. 11 at 13–14). These arguments miss the mark. The question is not whether the underlying conduct is unconstitutional. Rather, the relevant inquiry is whether Plaintiff's pleadings demonstrate that Defendants retaliated against him for engaging in constitutionally protected conduct. Said plainly, "retaliation for the exercise of constitutional rights is itself a violation of the Constitution." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

Here, the Undersigned finds that Plaintiff has stated a plausible First Amendment retaliation claim. To start, he engaged in protected conduct by inquiring about the status of his legal mail. *See, e.g.*, *Tate v. Bell*, No. CIV A 206-CV-00627, 2007 WL 1965592, at *13 (S.D. Ohio July 3, 2007) (finding that informal verbal complaints constituted protected conduct). With regard to the second factor, the Sixth Circuit "has held that both the placement in administrative

segregation and an increase in security-level classification constitute an adverse action." *Brown v. Mohr*, No. 2:13-CV-0006, 2016 WL 4721190, at *15–16 (S.D. Ohio Sept. 9, 2016), *report and recommendation adopted*, No. 2:13-CV-006, 2017 WL 127478 (S.D. Ohio Jan. 13, 2017) (citing *Hill v. Lappin*, 630 F.3d 468, 474 (6th Cir. 2010)). Defendant Ruiz taking Plaintiff to Defendant McRobie's office also constitutes an adverse action for pleading purposes. Finally, Plaintiff's allegations satisfy the third factor. At the pleading stage, circumstantial evidence of retaliatory motive is often sufficient to show causation. *Hill*, 630 F.3d at 475. Here, the temporal proximity between Plaintiff's protected conduct and the adverse actions plausibly show that the adverse actions were taken "at least in part to retaliate against [him] for engaging in protected conduct." *Id*.

Because the Undersigned finds that Plaintiff has set forth a plausible retaliation claim against Defendants McRobie and Ruiz, it is recommended that Defendants' motion to dismiss his claims for retaliation be denied.

### 5. *Eighth Amendment Claims*

Defendants also move to dismiss Plaintiff's Eighth Amendment claims. Plaintiff alleges that Defendants engaged in cruel and unusual punishment by forcibly removing him from mental health, placing him in the hole, and transferring him to a more restrictive unit. (Doc. 1, ¶¶ 25, 26; Doc. 12 at 6).

"'The Eighth Amendment prohibits any punishment which violates the civilized standards of humanity and decency, or involves the unnecessary and wanton infliction of pain.'" *Hargrove v. Holley*, No. 1:17-CV-560, 2017 WL 5004312, at *5 (S.D. Ohio Oct. 31, 2017), *report and recommendation adopted*, No. 1:17-CV-560, 2017 WL 6606962 (S.D. Ohio Dec. 27, 2017), *aff'd*, No. 18-3027, 2018 WL 7017746 (6th Cir. Oct. 17, 2018) (quoting *Estep v. Million*, No. 98-6322,

11

1999 WL 776202, at *1 (6th Cir. Sept. 24, 1999)). "'To prove an Eighth Amendment violation, an inmate must show that he has been deprived of the minimum civilized measures of life's necessities." *Hargrove*, 2017 WL 5004312, at *5 (quoting *Estep*, 1999 WL 776202, at *1)).

While being placed in the hole for several hours and transferred to a more restrictive unit constitute adverse actions for the purpose of pleading a retaliation claim, they do not rise to the level of cruel and unusual punishment. Rather, "'placement in segregation is a routine discomfort that is a part of the penalty that criminal offenders pay for their offenses against society.'" *Id.* (quoting *Estep*, 1999 WL 776202, at *1). The same is true regarding Plaintiff's transfer to a different unit. *See, e.g.*, *Sauter v. Bloyd*, No. 3:10CV-P720-H, 2010 WL 5290422, at *3 (W.D. Ky. Dec. 17, 2010) (repeated cell transfers and time in segregation failed to state an Eighth Amendment violation).

Similarly, Plaintiff's allegations that Defendant McRobie forcibly removed him from mental health and verbally harassed and intimidated him fail to state an Eighth Amendment claim. The "[u]se of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions." *Reynolds v. Warzak*, No. 2:09-CV-144, 2011 WL 4005477, at *5 (W.D. Mich. Sept. 8, 2011) (citing *Murray v. U.S. Bureau of Prisons*, 106 F.3d 401 (6th Cir. 1997) (noting that "the Eighth Amendment does not afford us the power to correct every action, statement or attitude of a prison official with which we might disagree")).

To the extent that Plaintiff is alleging that Defendant McRobie violated the Eighth Amendment by depriving Plaintiff of mental health services, this claim also fails. To state a cognizable claim, Plaintiff must have pled that he suffered from a "sufficiently serious" medical need, *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011), and that Defendants "knew of or disregarded an excessive risk to [his] health or safety," *Broyles v. Corr. Med. Servs., Inc.*, No. 08-

1638, 2009 WL 3154241, at *2 (6th Cir. Jan. 23, 2009). Even applying a liberal reading, Plaintiff's Complaint fails to satisfy these requirements.

Finally, Plaintiff uses the phrase "deliberate indifference" when describing Defendants' conduct. (*See generally* Doc. 1). It appears that Plaintiff, at least in part, is alleging that Defendants failed to protect him from the alleged unconstitutional conduct. But Eighth Amendment "failure to protect" claims concern allegations that prison officials failed to protect an inmate from assaults and require a showing that prison officials were aware of a risk of harm and did nothing despite that awareness. *See Kennedy v. Wilson*, No. 10-CV-299-HRW, 2013 WL 5234435, at *5 (E.D. Ky. Sept. 17, 2013) (citing *Farmer v. Brennan*, 511 U.S. 825, 835–38 (1994)). None of these allegations are present in Plaintiff's Complaint.

In sum, Plaintiff has failed to state a plausible Eighth Amendment violation, and consequently, it is recommended that Defendants' Motion to Dismiss these claims be granted.

### *6. Access to the Courts*

Finally, while Plaintiff does not expressly claim that Defendants impeded his access to the courts, the thrust of Plaintiff's allegations concern his legal mail. The Court will consider these allegations accordingly.

It is well-established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1997). To state a viable claim for access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996). Specifically, "a plaintiff must plead and demonstrate that the shortcomings in the prison have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim." *Wells v. Smith*, No. 1:06-CV-548, 2006 WL 3103189, at *2 (W.D. Mich. Oct. 31, 2006). While Plaintiff alleges that he "[s]tress[ed] [to Defendant McRobie] the urgency of the time sensitive documents making it to the

13

court by the deadline," (Doc. 1, ¶ 12), he does not allege that he has suffered any prejudice in pursuing a nonfrivolous legal claim. Consequently, Plaintiff has failed to state a First Amendment access to the courts claim. But because pro se complaints are to be liberally construed and in light of the importance of Plaintiff's claims regarding his legal mail, Plaintiff may, within 30 days, amend his complaint to state a cognizable access to the courts claim.

### B. Motion for Preliminary Injunction

As part of his requested relief, Plaintiff seeks "[a] preliminary and permanent injunction ordering Defendants to participate in further training and staff development, and an order directing the office of Chief Inspector to allocate a minimum of $2,000,000 for further training and staff procedures for complying with the Inmate Grievance procedures, proper investigative techniques and employee conduct training." (Doc. 1, ¶ 35). The Court has construed this request as a Motion for a preliminary injunction. (*See* Doc. 9).

"A preliminary injunction is an extraordinary measure that has been characterized as 'one of the most drastic tools in the arsenal of judicial remedies.'" *ACLU v. McCreary Cty.*, 354 F.3d 438, 444 (6th Cir. 2003) (quoting *Hanson Trust PLC v. ML SCM Acquisition Inc.*, 781 F.2d 264, 273 (2d Cir. 1986)). When considering a motion for preliminary injunction, a district court must balance four factors: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction." *City of Pontiac Retired Employees Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014) (en banc) (citation and internal quotation marks omitted).

Under the first factor, to establish a strong likelihood of success on the merits, the movant must demonstrate "more than a mere possibility" of success. *Nken v. Holder*, 556 U.S. 418, 435

(2009). This requires, "at a minimum," a movant to show "serious questions going to the merits." *Dodds v. United States Dep't of Educ.*, 845 F.3d 217, 221 (6th Cir. 2016) (citation and internal quotation marks omitted). The first factor is often determinative:

> [C]ourts have often recognized that the first factor is traditionally of greater importance than the remaining three. *See Roth v. Bank of the Commonwealth*, 583 F.2d 527, 537 (6th Cir. 1978). In fact, the Sixth Circuit has held that when the proponent of the injunctive relief has no chance of success on the merits of the claim, the Court may dismiss the motion without considering the other three factors. *See Michigan State AFL–CIO v. Miller*, 103 F.3d 1240, 1249 (6th Cir. 1997). Failure to do so is reversible error. *See id.*; *Sandison v. Michigan High School Athletic Ass'n*, 64 F.3d 1026, 1037 (6th Cir. 1995).

*Stanley v. Ohio Dep't of Rehab. & Corr.*, No. C2–02–178, 2002 WL 3140935, at *3 (S.D. Ohio August 12, 2002) (denying motion for injunctive relief after evaluation only of chance of success on the merits factor); *see also City of Pontiac Retired Employees Ass'n*, 751 F.3d at 430 ("When a party seeks a preliminary injunction on the basis of a potential constitutional violation, the likelihood of success on the merits often will be the determinative factor.").

It appears that Plaintiff's request, at least in part, concerns the prison's grievance system. The Undersigned has recommended that these claims be dismissed. (*See supra* at 9). Accordingly, the Court will not issue a preliminary injunction regarding BCI's grievance system. And, while the Undersigned takes Plaintiff's allegations of retaliation seriously, Plaintiff has not shown a strong likelihood of success on the merits of this claim.

In sum, Plaintiff has not met his heavy burden to show that the extraordinary remedy of a preliminary injunction is warranted. It is therefore recommended that his Motion for a Preliminary Injunction be denied.

## PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific

15

proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a de novo determination of those portions of the Report or specific proposed findings or recommendations to which objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.

Date: November 8, 2019 /s/ Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE