## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

Milous Brown,

      Plaintiff,

      v.

David Gray, *et al*.,

      Defendants.

Case No. 2:19-cv-2425

Judge Michael H. Watson

Magistrate Judge Merz

### <u>OPINION AND ORDER</u>

Trial in this matter is scheduled for July 31, 2023. Both parties have filed motions in limine. ECF Nos. 110 & 111. For the following reasons, the Court **GRANTS IN PART AND DENIES IN PART** each party's motion in limine.

### I.    STANDARD OF REVIEW

"A ruling on a motion in limine is no more than a preliminary, or advisory, opinion that falls entirely within the discretion of the district court." *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994) (citation omitted). The advanced ruling aids the parties "in formulating their trial strategy," but a court "may change its ruling on a motion in limine where sufficient facts have developed to warrant the change." *Id.* (citation omitted).

## II.    ANALYSIS

### A. Defendants' Motion

#### 1. Evidence Pertaining to Dismissed Claims

Defendants first move to exclude as irrelevant any evidence that relates to claims that have been dismissed in this case.  Specifically, Defendants move to exclude any evidence relating to the following dismissed claims: (1) access to the courts; (2) retaliation for visiting Mental Health Services; (3) any claim based on *respondeat superior*; and (4) Eighth Amendment claims based on Plaintiff's removal from Mental Health Services.

In support, Defendants argue that only Plaintiff's First Amendment retaliation claims against McRobie and Ruiz remain.  Moreover, Defendants construe the Sixth Circuit opinion in this case as finding that there are no more than three categories of facts relevant to those claims: (A) facts about Plaintiff's inquiries into his legal mail and attempt to seek help from Captain Howell; (B) facts about Plaintiff's transfer to administrative segregation and then to an allegedly worse cell; and (C) facts about the motivation for that transfer. Everything else, Defendants assert, is irrelevant.

Plaintiff concedes that he may not argue the merits of his dismissed claims at trial.  Nonetheless, he asserts, there exists evidence relevant to those dismissed claims that is *also* relevant to his First Amendment retaliation claims. He therefore argues that it would be improper to exclude such evidence given its dual relevance.

Evidence that "has any tendency to make a fact more or less probable than it would be without the evidence; and . . . is of consequence in determining the action" is relevant. Fed. R. Evid. 401. Generally, relevant evidence is admissible, and irrelevant evidence is inadmissible. Fed. R. Evid. 402. But, even relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

As a preliminary matter, and as all parties agree, Plaintiff may not argue at trial the merits of his dismissed claims. But, a piece of evidence may be relevant to more than one claim. And, to the extent evidence which would have supported a dismissed claim also supports a remaining claim, such evidence is relevant and admissible subject to a Rule 403 balancing test. *E.g.*, *Irvin v. City of Shaker Heights*, No. 1:06CV1779, 2012 WL 13028095, at *5 (N.D. Ohio May 17, 2012) ("[T]he parties may not reference claims that were previously disposed of . . . . However, to the extent that there are facts that relate to a claim that was dismissed and a claim that is still pending in this act, those facts and evidence are admissible."). The question is thus whether any evidence relevant to the dismissed claims in this case is also relevant to the remaining claims.

Plaintiff argues that evidence regarding Captain Howell's motivation for placing Plaintiff in administrative segregation, evidence about Plaintiff's attempt to access the courts through the prison mail system, and evidence about

Plaintiff's visits to Mental Health Services is relevant to his pending First Amendment retaliation claims. As to the first category, Plaintiff specifically states that he will not argue Captain Howell is liable under *respondeat superior* and instead will argue only that Captain Howell's motivation may shed light on whether, *inter alia*, McRobie and/or Ruiz "made retaliatory misrepresentations of [Plaintiff's] behavior in order to induce Captain Howell's actions." Mot. at 3, ECF No. 116. Second, Plaintiff argues that it is important to show that he was attempting to access the courts through the prison mail system—even though his access to the courts claim was dismissed—because that is the protected activity underpinning his retaliation claims. Third, Plaintiff argues it is important to introduce evidence that he visited Mental Health Services after his encounter with McRobie and Ruiz, and was seized there by McRobie, because it is circumstantial evidence of McRobie's retaliatory motive.

The Court cannot say at this juncture that the above evidence is irrelevant to Plaintiff's remaining claims or that, if relevant, it should be excluded under Rule 403. As to the first category, evidence about Plaintiff's interaction with Captain Howell is certainly relevant as the Sixth Circuit stated that Captain Howell's decisions may have been "set[] in motion," *Brown v. Gray*, No. 21-3386, 2022 WL 961246, at *4 (6th Cir. Mar. 28, 2022), by McRobie and Ruiz out of a desire to retaliate against Plaintiff for either asking them about his legal mail or seeing Captain Howell about the same.

Similarly, evidence in the second category might be relevant. That Plaintiff was asking McRobie and Ruiz about legal mail is relevant not because it supports a nonexistent access-to-the-courts claim but because it proves Plaintiff was engaged in a protected activity. On the other hand, if the parties stipulate that Plaintiff was engaged in protected activity, testimony about the same may be unnecessary or cumulative. In any event, certainly the evidence need not concern the specifics of that legal mail or the underlying lawsuit to which it related.

The relevance of evidence in the third category—concerning Plaintiff's visits to Mental Health Services—is less clear. On one hand, it is helpful to understand the sequence of events and how Plaintiff was ultimately placed in administrative segregation/transferred to a different housing unit, and it *could*— depending on the facts—shed light on McRobie's motivation. On the other hand, there is no viable claim at this juncture that Plaintiff suffered First Amendment retaliation *for visiting Mental Health Services.* And, as addressed below, Plaintiff's mental and emotional distress is irrelevant to damages. Nonetheless, because McRobie's actions during the seizure may shed light on his motivation, the Court cannot preclude it at this juncture. Such evidence will entail informing the jury that Plaintiff went to Mental Health Services, where he was seized by McRobie. It may also include details about the seizure itself, including anything McRobie may have said. However, Plaintiff is cautioned that the Court preliminarily finds that the evidence about his visit to Mental Health Services is

relevant to *only* whether McRobie and Ruiz retaliated against him for asking about his legal mail or for seeking help from Captain Howell.  Consistent with the below, Plaintiff is given very limited leeway.

In sum, Plaintiff's response brief demonstrates that Plaintiff has no intent to argue his dismissed claims before the jury and will limit the introduction of evidence to only that which is also relevant to the remaining claims.  Accordingly, and consistent with this Opinion and Order, Defendants' motion is **DENIED**.

### 2. Evidence of Emotional Damages

Defendants also argue that, pursuant to 42 U.S.C. § 1997e(e), Plaintiff is prohibited from bringing a federal suit for mental or emotional injuries because he has not made a prior showing of a physical injury or a commission of a sexual act.  Thus, Defendants argue, Plaintiff should be precluded from admitting at trial any evidence concerning mental or emotional damages.

Plaintiff contends § 1997(e)(e) does not prohibit him from asserting his First Amendment retaliation claims, which allege a constitutional—not a mental or emotional—injury.  He asserts that Sixth Circuit law allows him to pursue nominal and punitive damages for the constitutional injury, notwithstanding his failure to allege a physical injury.  In any event, Plaintiff argues that, even if his mental and emotional distress is irrelevant to damages, his "relationship with mental health" is pertinent to Defendants' motive and to whether the placement in administrative segregation and change of housing amount to adverse actions.

Resp. 5, ECF No. 116. As it is relevant for those purposes, he contends, it should be admitted.

Defendants are correct on several points but ultimately cannot prevail in their quest to exclude *all* evidence of emotional and mental distress. If Plaintiff establishes First Amendment retaliation, he may recover compensatory and punitive damages for the violation of his First Amendment rights, even without a showing of physical injury.[1] *King v. Zamiara*, 788 F.3d 207, 213 (6th Cir. 2015). This is because a constitutional injury is "distinct from mental and emotional injuries," so § 1997e(e) does not bar compensatory or punitive damages for a constitutional injury. *Id.* at 213.

Still, before Plaintiff can recover compensatory damages in this case, he must first prove that the retaliation caused an "actual injury" distinct from mental or emotional distress and distinct from any abstract value inherent in the right to freedom of speech.[2] *See id.* Because the "actual injury" must be distinct from mental or emotional distress, evidence of said distress is irrelevant to compensatory damages. Even Plaintiff appears to concede this.

---

[1] He may also be able to recover nominal damages. *Small v. Brock*, 963 F.3d 539 (6th Cir. 2020) ("There is widespread agreement among our sister circuits that § 1997e(e) allows prisoners alleging non-physical injury to still pursue claims for nominal damages . . . .").

[2] If Plaintiff can establish an actual injury, he may be entitled to presumed damages as the measure of compensatory damages. "When it is difficult to quantify precisely the damages caused by [an] injury, presumed damages may be awarded, but the award must focus on *the real injury sustained* and not on either the abstract value of the constitutional right at issue, . . . or the importance of the right in our system of government . . . ." *Id.* at 214 (cleaned up).

Moreover, the Court fails at this juncture to see how Plaintiff's mental health is related to Defendants' motive.  As noted above, at issue in this case is whether Defendants retaliated against Plaintiff for inquiring about his legal mail or for seeking help from Captain Howell—not whether they retaliated against him for visiting Mental Health Services.  The relevance of Plaintiff's mental health to Defendants' motive is, thus, not clear.

Finally, whether Plaintiff's placement in administrative segregation or his re-housing to a less desirable placement amount to adverse actions under the law is not at issue.  Rather, if Plaintiff proves at trial that both of those things happened, they were—as a matter of law—adverse actions.  *Brown v. Gray*, No. 21-3386, 2022 WL 961246, at *5 (6th Cir. Mar. 28, 2022) ("*Hill* and *Thaddeus-X* clearly established that placing a prisoner in administrative segregation and transferring him to a less desirable housing area are adverse actions." (citations omitted)).  In other words, although Plaintiff must convince a jury that he was placed in administrative segregation and was transferred to a less desirable housing area, he need not convince a jury that those actions would deter a person of ordinary firmness from exercising their First Amendment rights.  The effect those actions had on his mental health is thus irrelevant to this prong of his retaliation case.

Despite the above conclusions, evidence of Plaintiff's mental health is relevant insofar as it explains why Plaintiff left McRobie and Ruiz and went to Mental Health Services, where he was eventually seized.  Accordingly, the Court

preliminarily rules that Defendants' motion is **GRANTED IN PART AND DENIED IN PART**. Plaintiff may testify that he went to Mental Health Services after the pertinent interactions with McRobie and Ruiz, in order to explain his whereabouts when he was seized. His leeway is limited; one or two questions should suffice. Counsel may not argue emotional distress in relation to damages.

## B. Plaintiff's Motion

### 1. The Nature of Plaintiff's Convictions

Plaintiff moves to prohibit Defendants from introducing evidence concerning the nature of his convictions (gross sexual imposition) and the fact that he is required to register as a child sex offender. Plaintiff argues that, although the fact of conviction is relevant to impeachment under Federal Rule of Civil Procedure 609(a), the nature of the crimes is unduly prejudicial and should therefore be excluded under Rule 403. Instead, Plaintiff argues, Defendants should be limited to admitting only the fact that Plaintiff was convicted of three felonies and is serving a fifteen-year sentence of imprisonment.

Defendants argue that evidence of Plaintiff's crimes of conviction will be offered for impeachment purposes *and* as substantive evidence. Because they intend to offer it as substantive evidence, they argue it should not be excluded.

The Court considers the evidence's impeachment value first. Because the convictions: (1) satisfy the timing requirement of Federal Rule of Evidence 609; (2) were for felonies punishable by more than one year in prison; and (3) are

being offered in a civil case, evidence of the same "must" be admitted "subject to Rule 403" if Plaintiff testifies at trial. Fed. R. Evid. 609(a).

Rule 403 would permit exclusion of the convictions "if [their] probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Albeit in the context of criminal trials, the Sixth Circuit has directed judges to consider the following factors when determining whether to admit prior convictions: (1) the impeachment value of the prior crime; (2) the point in time of the conviction and the witness' subsequent history; (3) the similarity between the past crime and the charged crime; (4) the importance of the defendant's testimony; (5) the centrality of the credibility issue. *United States v. Moore*, 917 F.2d 215, 234 (6th Cir. 1990) (citations omitted).

Again, Plaintiff does not move to exclude all evidence of the prior convictions but rather moves to exclude only evidence about the name or nature of the convictions, details about the underlying crimes, and the fact that he is required to register as a child sex offender. The *Moore* factors, as modified to fit this analysis, weigh against admitting evidence concerning the nature of the crimes for solely impeachment purposes. The nature of the crimes (gross sexual imposition)—although deplorable—is not particularly indicative of one's tendency for truthfulness. The first factor thus weighs against admission. Plaintiff was convicted more than twelve years ago, and the Court lacks information about his tendency for truthfulness during his period of incarceration, so the second factor

weighs against admission.  The third factor is neutral as this is a civil case.

Plaintiff's testimony is key to proving his case, and his credibility will therefore be

central to this case.  The fourth and fifth factors therefore weigh in favor of

admitting the *fact* of conviction, as it is probative for impeachment.  But it is plain

that the *nature* of Plaintiff's crimes of conviction is extremely prejudicial, and the

Court finds that admitting it at trial would risk unfair prejudice.  There is simply too

great a risk that the jury would base its decision on an impermissible purpose

after it learns the nature of his crimes of conviction.

Thus, the Court would ordinarily be inclined to grant Plaintiff's motion and

permit Defendants to admit only the fact that Plaintiff was convicted of three

felonies in 2011 and 2012, respectively, and the fact that he was sentenced to

fifteen years' imprisonment for those crimes.  *Cf. United States v. Kemp*, 546

F.3d 759, 764 (6th Cir. 2008) ("[T]he prejudicial effect of the convictions' names

[taking indecent liberties with a minor] was significant.").

But Defendants argue they must introduce the evidence to explain motive

—which is a central substantive issue in this case.  The substantive relevance of

the evidence certainly changes the calculus.

Still, the Court has grave concerns about Defendants' argument.

Defendants' response brief does not technically state that any witnesses will

testify that Plaintiff's crimes of conviction were the motivating factor in anyone's

decision.  Rather, Defendants' brief speaks in general terms about "inmates" and

says the crimes "can be" a factor in how officials "including" Captain Howell

exercise discretion as to housing placements.  Resp. 3–4, ECF No. 118.  To the extent Defendants wish to elicit evidence about considerations that officials typically consider, they can certainly do so through generalities rather than discussing the nature of Plaintiff's specific convictions.

Still, if Defendants have evidence that Plaintiff's specific crimes of conviction were, *in fact*, the motivating factors for the pertinent adverse actions, then such evidence is paramount to Defendants' case.  In other words, Plaintiff cannot argue that actions were motivated by retaliation for exercising his First Amendment rights while prohibiting Defendants from explaining that the actions were truly motivated by Plaintiff's crimes of conviction.  To that end, it is not lost on the Court that this is a civil case.  Unlike in a criminal case, where a defendant may feel the need to testify to protect his liberty, a plaintiff *chooses* to file a civil suit.  Such a choice has consequences.  Although the Court takes every possible measure to ensure the jury renders a fair verdict, a plaintiff who invokes the Court's jurisdiction must play by the rules of evidence, even when unfavorable.

Thus, this aspect of Plaintiff's motion is therefore **DENIED**.  But the Court cautions Defendants that they are not permitted to discuss Plaintiff's crimes of conviction when they elicit general testimony about the types of factors typically considered during an analysis of whether to place an inmate in administrative segregation or in determining where to house the inmate after a period of segregation.  Defendants might be permitted to introduce evidence of Plaintiff's crimes of conviction through testimony that a particular decisionmaker *actually*

was motivated by Plaintiff's crime of conviction to take an adverse action. Before doing so, Defendants are instructed to proffer the evidence outside the presence of the jury and obtain a final ruling by the Court. Plaintiff and Defendants shall craft a joint, proposed limiting instruction to be read to the jury in the event such evidence is admitted.

### 2. Permission for Witnesses to Testify Via Videoconference

Next, Plaintiff moves the Court to permit five of his witnesses to testify via videoconference. He argues that two of the witnesses, Tylor Trago and Joseph Lucas, are presently incarcerated, and three others, Ryan David Clark, Michael Rizzo, and Tara Clune, may not voluntarily travel to Columbus. He contends that remote testimony would be logistically easier and more cost effective for the incarcerated witnesses. Moreover, the three non-incarcerated witnesses live in eastern Ohio, and Plaintiff lacks the financial means to compel their attendance through subpoena.[3] Permitting remote testimony of all witnesses, he contends, would reduce the cost of compelling their testimony by reducing mileage fees.

Defendants do not oppose permitting the incarcerated individuals from testifying from their place of incarceration but do oppose permitting the non-incarcerated individuals to testify via videoconference. Specifically, Defendants argue that the transportation of incarcerated witnesses to the courthouse would create security concerns that justify permitting their live testimony to proceed via

---

[3] Witnesses are owed a $40 per day attendance fee, including travel time, plus mileage. 28 U.S.C. § 1821.

videoconference from a controlled location (prison).  But, Defendants argue there are no security concerns that would justify permitting the non-inmate witnesses to testify remotely, especially given that no details were proposed for such testimony.

The Federal Rules of Civil Procedure require witness testimony at trial to be taken "in open court" unless a statute or certain rules provide otherwise.  Fed. R. Civ. P. 43(a).  Nonetheless, "[f]or good cause in compelling circumstances and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location."  *Id.*

Because the parties agree, and to ameliorate the logistical and security concerns inherent in transporting prisoners, Plaintiff's motion is **GRANTED** with respect to Tylor Trago and Joseph Lucas.  They may be permitted to testify via videoconference from their respective places of incarceration.  Plaintiff's counsel and Defendants' counsel shall work together and with the places of incarceration to ensure the testimony occurs in an appropriate setting and under appropriate supervision.  To the extent there is any cost associated with remote testimony, Plaintiff shall bear it.

Plaintiff's motion is **DENIED** with respect to the non-inmate witnesses. Plaintiff's counsel provided no proposed details for any such remote testimony, and the Court is not convinced there would be an acceptable facility or format for conducting supervised remote testimony for those individuals.  Furthermore, the parties, the Court, and jurors benefit from live testimony from which the jury may

more easily make credibility determinations, and the Court has an interest in minimizing the disruptions that so often accompany reliance on technology.

Plaintiff's request to offer Mr. Trago's and Mr. Lucas's testimony via affidavit under Federal Rule of Evidence 807 is **DENIED**.  The inability to accommodate the witnesses' schedules to arrange remote testimony is an insufficient basis to permit the hearsay evidence under Rule 807.  Moreover, the affidavits do not contain a sufficient guarantee of trustworthiness, and Defendants have a strong interest in being able to cross examine these witnesses, who are not unavailable.  Similarly, the jury has a strong interest in observing live testimony and witness demeanor.

Although Plaintiff is responsible for paying the costs associated with securing witness testimony, if Plaintiff's counsel is willing to front the same, the Court will seek reimbursement for counsel, in a total amount not to exceed $1,000, from the Attorney Admission Fund.  Approval of the Court's request for reimbursement is not guaranteed, however.

This aspect of Plaintiff's motion is thus **GRANTED IN PART AND DENIED IN PART**.  After considering the Court's ruling, Plaintiff shall file a notice on the docket indicating whether he wishes to pursue remote testimony for the incarcerated witnesses or whether he would like the Court to issue a writ for their physical presence at trial.

### III. CONCLUSION

The Court's preliminary rulings on the parties' motions are set forth above.

**IT IS SO ORDERED.**

**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**